[Crim. No. 653.   Fourth Dist.   Dec. 22, 1947.]

THE PEOPLE, Respondent, v. EDWARD BROOKS
WILLIFORD, Appellant.

Russell Behrens and James E. Walker for Appellant.

Fred N. Howser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crimes of burglary and assault with a deadly weapon, and was found guilty by a jury. He appeals from the judgment and from an order denying his motion for a new trial.

About 3 a. m. on April 16, 1947, two men, one of them "Whitey" Anderson, broke into a gun shop in Seal Beach and were removing some 25 guns, rifles and pistols, with a quantity of ammunition. Two police officers, hearing the noise, came to investigate. As they approached from the alley, the lights in the gun shop were on and a black Pontiac automobile was standing near the rear door of the gun shop with its engine

running. Some of the guns were in this car and some were on the ground. As the officers approached, they saw a man standing in the lighted doorway, and another man who was standing in the shadows so they could not identify him. The officers ordered the men to put up their hands and instead of complying, the two men immediately began shooting at the officers, who also began shooting. The two men then ran through the shop, out into the street and escaped.

Both of the officers positively identified the defendant as the man who was standing in the rear doorway of the shop and who first began shooting. They testified that he was standing in the doorway of this well-lighted shop, that they could see distinctly, that they had a good look at him, and that they could not be mistaken. In the glove compartment of the abandoned car there was found a camera with exposed films. These films were developed and produced pictures of Anderson and his wife, and of the defendant and the woman with whom he was living. In the car was also found a nearly full whiskey bottle, on which were the defendant's fingerprints. Several shells for a P-38 automatic pistol were found around the spot where the man in the doorway had been standing. All of the guns taken from the shop were found in and around the car, with the exception of three pistols which were later recovered.

Many surrounding circumstances are shown by the evidence. One of the owners of the gun shop testified that ammunition for this P-38 gun was hard to obtain and that on a Sunday shortly before April 15, the defendant, with a man who was one of his alibi witnesses here, came into the shop seeking such ammunition. The abandoned car was one which had been used by Anderson, and the defendant had spent a large part of his time with Anderson for about a month. So far as the record shows, neither had had any gainful occupation other than gambling. During the forenoon of April 16, Anderson was heard telling his wife that he had abandoned the car, and complaining because she had left the camera and films in it. For the ostensible reason that they expected soon to take a trip to Lake Tahoe the Andersons, and the defendant and his companion, moved that day from ''Willowbrook'' to a motel in Huntington Park, where they were registered under assumed names. A few days later, they went to Lake Tahoe in a Buick car and there the two couples occupied adjoining cabins in a place that contained only three cabins. The next

day, Anderson and the defendant returned to Los Angeles County in the Buick car, leaving the women at the cabins. On April 22, an officer recognized the defendant riding with another man in this Buick car near Wilmington. He gave chase, running 85 miles an hour, but lost the other car in the traffic. About 15 minutes later, that car was parked in a vacant stall behind an apartment house in Wilmington. A lady, who lived in the apartment house, testified that when the car came in there were two men in it, one of whom she thought was the defendant. This car stayed there the rest of that day and all the next day. The next night, the police broke open the car and found in the glove compartment one of the stolen pistols, Exhibit 6. The defendant admitted on the stand that he saw this pistol while he and Anderson were returning from Lake Tahoe in the Buick, that ''It worked out from under the seat, under my seat.''

Anderson and the defendant returned to Lake Tahoe, apparently in another Buick. On April 25, highway patrol officers questioned Anderson about the ownership of the Buick. Anderson said he would show the papers, and took them into the defendant's cabin. Anderson then drew a pistol, and one of the officers shot and killed him. In the defendant's cabin, in a coat belonging to the woman who occupied that cabin with him, was found another of the stolen pistols, Exhibit 7. This woman testified that she did not know how the pistol got there, and the defendant admitted that he had seen it that morning lying on their bed. In Anderson's adjoining cabin the third stolen pistol, Exhibit 8, was found under the pillow of the bed, and a P-38 pistol was also found in that cabin.

The defendant attempted to establish an alibi. He testified that on the preceding evening of April 15, he and Anderson left his home and went to a certain house in Compton to attend a poker party; that they arrived there about 11 or 11:30 p. m.; that Anderson only stayed a few minutes and he did not see him again until morning; that he, himself, remained at the poker party until after 4 a. m.; and that he arrived home about 5:30 or 6 a. m. When asked whether he remained at the poker party continuously until 4 a. m., he replied that he did ''to the best of my knowledge.'' The defendant's brother and several of his friends testified that the defendant arrived at this poker party shortly before midnight and remained there until the party broke up toward morning.

However, the defendant told two officers when he was first arrested, that he got home about 11:30 p. m. on the night of the 15th; that he and Anderson then went to Long Beach in the Pontiac car, getting there about 12:30; and that he left Long Beach about 2:30. He refused to tell them what he then did, saying that he was "not going to tell you where I went." He also told an officer that he arrived home about 6 a. m. and that Anderson was then there, but refused to tell whether Anderson had come with him. This alibi evidence was not only contrary to some of the defendant's admissions, as well as to reasonable inferences from the statements he made to the officers, but in several respects the alibi witnesses contradicted each other. Moreover, the entire alibi evidence contained inherent weaknesses which must naturally have greatly affected its weight with the jury.

The defendant contends that because the evidence, with respect to his guilt, was extremely close, the errors claimed were especially prejudicial, and that the failure of the jury to believe his alibi witnesses can be explained only by the fact that the jury was prejudiced through certain misconduct on the part of the district attorney and one of his witnesses.

It is first contended that the court erred in admitting evidence that the defendant and Anderson were associated together for some two weeks before the burglary; that the defendant had inquired at the gun shop shortly before the burglary about shells to fit a P-38 gun; that fired shells to fit such a gun were found at the scene of the burglary; that the defendant was seen riding, on April 22, in a Buick in which was later found one of the stolen guns; that the defendant made two trips to Lake Tahoe with Anderson and that one of the guns was found in the car in which they had ridden; that at the time Anderson was killed a P-38 gun and one of the stolen guns were found in his cabin; that the other stolen gun was found in a coat belonging to the woman who shared the defendant's cabin; and that the defendant had admitted to an officer that he had used "some guns" in target practice on the trips to Lake Tahoe with Anderson. It was, and has been, the defendant's contention throughout that this burglary was committed by Anderson and some other man, and it is here contended that while the evidence just described was admissible for other purposes its admission was here sought for the purpose of showing possession of the guns by the defendant and that it was, therefore, in-

admissible. Without doubt, this evidence was admissible for other purposes and we cannot agree that it was inadmissible for the purpose of attempting to show possession of the guns, or some of them, in the defendant. It was the prosecution's theory that Anderson and the defendant had worked together in committing this burglary, they had a right to introduce evidence in support of that theory, and most, if not all, of this evidence was material to that end. Nor can it be said that the attempt to show possession of the guns in the defendant was entirely unsuccessful. ■ One of the stolen guns was found in the pocket of a coat belonging to the woman who occupied the cabin with the defendant. She disclaimed all knowledge of how it got there and the defendant admitted that it was lying on their bed that morning. Another of the stolen guns was found in a car in which the defendant had been riding, he admitted having seen it there on the trip down from Tahoe, and his attempted explanation of the circumstances under which he saw it is not too convincing. He also admitted that he had seen the other stolen gun in Anderson's possession. The question was one of fact for the jury and this evidence was not only admissible, but was sufficient to warrant the court in giving the usual instruction with reference to the possession of stolen property, of which the defendant also complains.

■ It is next contended that the district attorney committed prejudicial misconduct in cross-examining one of the alibi witnesses with respect to his conviction of a felony. On cross-examination, this witness was asked whether he had ever been convicted of a felony. He replied: ''I have been convicted, but I don't know of a felony or not.'' The matter was then dropped but on redirect examination defendant's counsel explained to the witness what a felony was, and then asked him whether or not he had been convicted of a felony. He replied ''No,'' and was excused. The following day the witness was recalled for further cross-examination. When asked if his full name was Frank Ralph McDonald, he replied it was Frank Leon McDonald. The witness was then asked whether he had ever been convicted and had served sentences in penitentiaries in Pennsylvania, Ohio and New York, and in each instance replied in the negative. Defendant's counsel stated that the district attorney had the wrong man in mind, assigned the asking of the question as prejudicial misconduct, and asked that the jury be instructed to disregard

the question. The jury was sent out and an argument had before the court, which does not appear in the record. Thereafter, the court overruled the objection and the witness was again asked similar questions and denied that he had served any such terms. Upon redirect examination by defendant's counsel the witness then testified that during the times in question he was in the Army and that he had been honorably discharged. Apparently, the district attorney had before him the record of one Frank Ralph McDonald and was attempting to show that this witness was the same person. While he was unsuccessful in so doing there is nothing to indicate that he was acting in bad faith and he had enough to convince the court, in the absence of the jury, that the matter should be gone into. The questions were confined to permissible matters and the doubt as to the identity of the person involved justified going into the matter the second time. The results obtained were more favorable to the defendant than to the prosecution, and neither prejudice nor intentional misconduct appears.

██ During cross-examination, this same witness was also asked if he had gone under the assumed name of Frank Waack, and he replied that he had not. It is argued that the name of the witness was not in issue and that prejudicial misconduct appears. This occurred while the district attorney was trying to ascertain the real identity of the witness, and no objection or assignment of error was made.

██ It is next contended that a prosecution witness committed prejudicial misconduct in referring to the defendant as "Edward Brooks Williford, alias." The witness, a deputy sheriff, was being questioned with respect to a record in the sheriff's office. When asked if a certain card had been prepared under his supervision he replied that it had, and then proceeded with the voluntary statement "the front side bears the name, Edward Brooks Williford, alias——." At that point, an objection was made and sustained. No request was made to have the jury disregard it. No prejudicial error appears in this connection. (*People* v. *Muchupoff*, 79 Cal. App. 306 [249 P. 240]; *People* v. *Willmurth*, 77 Cal.App.2d 605 [176 P.2d 102].)

██ It is next contended that the district attorney committed prejudicial misconduct in cross-examining a character witness. This witness had largely destroyed the effect of his own evidence by admitting that he knew nothing about de-

fendant's reputation, and that all he knew about him was from seeing him "occasionally around the store." The witness was then asked whether his testimony would be the same if he had heard of several arrests of the defendant for various offenses. An objection was then made for the first time, the jury was excused and the matter was argued before the court in the absence of the jury. Defendant's counsel then conceded that several of the questions were proper, and stated that it would be satisfactory if the judge struck out one question and answer and allowed the others to remain. The jury was called back, the one matter was stricken and the jury instructed to disregard it, and the others were allowed to remain. Any possible error was invited by the defendant and no prejudice appears.

The final contention is that the district attorney committed prejudicial misconduct in his argument to the jury in three instances. It is first contended that he went outside the record, while replying to a criticism of county officials which had previously been made by one of defense counsel. The district attorney stated that one of the best officers in the county had died about the time this criticism was being made, and that he hoped that counsel, by his remarks, had not intended to criticize this fine man, a friend of many of those present. While these remarks were unnecessary, no possible prejudice or prejudicial misconduct appears. In another instance, during his closing argument, the district attorney said "Personally, I have never tried a defendant that I thought his guilt stood out more than this defendant." It is argued that this statement discloses a personal belief entertained at the beginning of the trial and not one based on evidence produced at the trial. When the statement is read in connection with the rest of the argument then being made, it appears that the district attorney was referring to the evidence produced, and was saying that the guilt of the defendant was disclosed by that evidence to a greater degree than in any other case he had ever tried. The statement was not objected to or assigned as misconduct at the time, and the cases relied upon by the defendant are clearly distinguishable. In the other instance, the district attorney stated several times that the various guns in question were found either in the possession of the defendant or of Anderson. At one time, he stated that the P-38 pistol was found at Lake Tahoe in the possession of the defendant. This was not strictly correct

as it was found in Anderson's cabin but, in view of all the evidence, no possible prejudice could have resulted. It could well be argued that the defendant was in constructive possession of this gun since Anderson was his accomplice. No intentional or prejudicial misconduct appears in connection with the argument.

In addition to a rather strong case of circumstantial evidence, the direct evidence of eyewitnesses is amply sufficient to sustain the verdict and judgment, and no reversible error appears.

The judgment and order are affirmed.

Marks, J., and Griffin, J., concurred.